Francis A. H. Bergmann and Another, Respondents, *v.* Hamilton
H. Salmon, Individually, and Hamilton H. Salmon and
Another, as Executors, etc., of Hamilton H. Salmon, Deceased,
Appellants, Impleaded with Another.

*Promissory note — delivered by mistake and fraudulently accepted — a claim in a
pleading for unauthorized, does not preclude proper, relief.*

Where a note and collateral security thereto were given by the maker under a
mistake of the maker as to the personality of the party receiving them, and
were accepted by such person fraudulently, with knowledge of the maker's
mistake and of the rights of a third person thereto, such note is void in its
inception.

An erroneous claim by a pleader, as to the relief to which he deems himself
entitled, does not preclude the court from giving the party the remedy which
the facts stated demand.

Appeal by the defendants, Hamilton H. Salmon, individually,
and Hamilton H. Salmon and another, as executors, etc., of
Hamilton H. Salmon, deceased, from a judgment of the Supreme
Court in favor of the plaintiffs, entered in the office of the clerk of
the county of New York on the 11th day of May, 1894, upon the
decision of the court rendered after a trial at the New York Special
Term, directing that the defendant Hamilton H. Salmon, individ-
ually, surrender to the plaintiffs a certain canceled promissory note,
and that the plaintiffs pay to the defendants Hamilton H. Salmon
and another, as executors, etc., of Hamilton H. Salmon, deceased,
the sum of $1,153, and that the defendants Hamilton H. Salmon
and another, as executors of Hamilton H. Salmon, deceased, deliver
to the plaintiffs a certain policy of life insurance and certain other
collateral held by them.

*R. W. S. Johnston*, for the appellants.

*Lloyd McKay Garrison*, for the respondents.

Barrett, J.:

The plaintiffs here are not barred, by the framework of their com-
plaint, from obtaining such relief as they are entitled to upon the
facts found.

It is true that they demand judgment, declaring the transactions

set forth in the complaint to be usurious. But they also demand other and further relief, and especially that they be decreed to be entitled to all money due or to become due on account of a certain policy of life insurance issued by the defendant company; and that said defendant company be directed to recognize such ownership, and to pay over to them all moneys now due or to become due on such policy.

The appeal comes up on exceptions to the conclusions of law. The case does not contain the evidence, and, consequently, the sole question is whether the conclusions of law are supported by the findings of fact.

The complaint sets out a long series of transactions originating with a loan of $1,000 in the month of August, 1888, evidenced by a promissory note, and secured by an assignment of the policy in question. This note was made by the plaintiffs payable to Salmon six months after date, with interest. It was renewed in February, 1889; again in August, 1889, and again in February, 1890.

Upon each renewal the policy was again assigned to Salmon as security. The plaintiffs never saw Salmon, and the business was done with a broker named Steers. When the loan was originally made, they signed a paper directed to Salmon, instructing him to pay the $1,000 to Steers. Salmon did so, but Steers only accounted to the plaintiffs for $950. Each time that the note was renewed the plaintiffs paid Steers ninety dollars. This is alleged to have been for interest, additional commissions, brokerage and expenses, but there is neither allegation nor finding that Salmon agreed to or did receive, at these respective times, anything more than lawful interest. When the renewed note of February, 1890, matured, Salmon was dead, but the plaintiffs were unaware of that fact. Thereupon, Salmon's son, the present defendant, Hamilton H. Salmon (who bore the same Christian name as his father), evidently concealed from the plaintiffs the fact of his father's death, and suffered them unconsciously to treat him as their creditor. Ignoring his father's estate, he took the transaction to himself personally, and procured from the plaintiffs what purported to be another renewal note payable to himself, in the original name of Hamilton H. Salmon, and likewise secured by an assignment to himself in this name of the policy in

question. This note differed from the renewals taken by Salmon, Sr., in that it was made out for $1,288.43, while all the previous renewal notes were for the sum of $1,000.

Now, it is quite clear, whatever else may be said, as to this last transaction with Salmon, Jr., it was not tainted with usury. There was in fact no legal relation between him and the plaintiffs growing out of the original transactions, or out of the transaction as it existed at the time of Salmon, Sr.'s, death. That transaction was represented by the executors of Salmon, Sr. In their answer these executors disclaim this action of Salmon, Jr., for they deny that they " hold the alleged note of $1,288.43, or said tontine policy, or divers assignments, or any assignment thereof, as security for said note."

Whatever, therefore, might have been the effect of this last transaction with Salmon, Jr., had it been made upon behalf of his father's estate, it is quite evident that, as a transaction with him personally, it was without consideration. Nay, more, it was void in its inception, not for usury, but for fraud. The note and assignment were given to Salmon, Jr., by the plaintiffs plainly through a mistake of fact as to his personality. And they were accepted by him fraudulently ; that is, with knowledge of the plaintiffs' mistake, and certainly with full knowledge of the rights of his father's estate. Upon the trial the invalidity of this last note, and of the assignment of the policy given to secure it, was substantially conceded by the defendants. This is apparent from the following finding, made at their request by the learned justice at Special Term :

" *Thirty-fifth.* That the said last-mentioned note and the said assignments of the said policies of insurance last above· mentioned were and each of them was *produced by the defendants on the trial of this action canceled, and the same now are canceled, and of no force and effect.*"

There is, therefore, no substance in Salmon, Jr.'s, appeal. What matters it to him whether the note and collateral were declared to be invalid upon one ground rather than upon another? The pith of the judgment is that they be canceled, and he says he has already canceled them. But that act of his was done under stress of the trial. It had not been done when the action was commenced. In his answer he denies that he holds these securities indi-

vidually. If he had then admitted that fact, and had offered to cancel them, or had stated that they were already canceled, the trial would have been unnecessary as to him. As it is, he cannot complain of the form of the judgment, nor can he prevent a decree for the delivery of the canceled instruments to the plaintiff. If they are genuinely canceled it is immaterial to him what is done with them.

As to the judgment against the executors of the estate of Salmon, Sr., we see no reason why, with a modification to which reference will presently be made, it should not be affirmed. It must be conceded that the transaction between Salmon, Sr., and the plaintiffs was not usurious. There is no direct allegation in the complaint of a usurious agreement. Nor is any such agreement found as matter of fact. The relief granted as against the executors proceeded, not upon the theory that the securities were vitiated by usury, but upon a principle applicable even though they were entirely valid, namely, that upon paying these executors all that the estate of Salmon, Sr., was entitled to, the plaintiffs should have a return of their securities. For it seems that while Salmon, Sr., lived *the original notes were not returned when the renewals were given.* So that he had in his possession several instruments representing the same transaction. This relief was appropriate to the case made by the complaint and by the findings of fact. The plaintiffs were not estopped by the prayer for relief, even if it had been limited to a prayer that the instruments be declared to be usurious. Still less when they asked for other and further relief, and especially that they be decreed to be entitled to the moneys payable upon the policy by the insurance company. They charged, it is true, that the notes and renewals were made " fraudulently, corruptly and usuriously," but they stated no fact inconsistent with Salmon, Sr.'s, innocence. Nor was any such fact found by the Special Term. Not having alleged a usurious agreement, these adverbs were mere characterization. Omitting them as such, the plaintiffs were entitled to the relief granted, though not to the precise relief claimed. It is well settled that an erroneous claim by the pleader as to the relief to which he deems himself entitled " does not preclude the court from giving the party the relief to which *he is* entitled *by the facts stated.*" (*Chatfield* v. *Simonson,* 92 N. Y. 218.)

Upon these facts we think it clear that the executors were entitled to the full $1,000 loaned by Salmon, Sr. It was error to allow them but $950. If they were entitled to but $950, it was necessarily because the transaction was usurious. But, as we have seen, there was nothing in the complaint or findings of fact to justify such a conclusion. And it was illogical to give relief incident to an innocent transaction upon a theory justified only by its guilty character. The interest, however, was properly allowed, not from the date of the original loan, but from the date when interest was paid upon the last renewal note of $1,000. The learned justice has found as a fact:

"XXI. That full interest on note of August 13, 1888, and on each renewal thereof, was paid by or on behalf of plaintiffs to and including August 7, 1890."

The judgment as against the executors should accordingly be modified by requiring the plaintiffs to pay them, as a condition of the relief granted, the full sum of $1,000, with interest thereon from August 7, 1890, to the date of payment. It should also be modified by striking out the provision requiring these executors to furnish to the plaintiffs a certificate of the issuance to them of letters testamentary, and of their qualifications and continuance as such executors.

The judgment as against Salmon, individually, should also be modified by simply adjudging the instruments in his possession to be void, and requiring him to deliver them up to the plaintiffs, canceled as they were when produced upon the trial.

No costs of this appeal to either party.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment modified as directed and affirmed as modified, without costs.